# EXHIBIT ONE

FILED IN CLERK'S OFFICE



Federal Medical Center, Devens
Health Services

Form: Inmate Request for Compassionate Release Consideration

| TO:<br>MEDICAL SOCIAL WORK | DATE:<br>April 13, 2020 |
|---|---|
| FROM (print): Doherty Kushimo | REGISTER NO:<br>09728-070 |
| Signature: | UNIT: Camp (I-Unit) |

**Instructions:** In order to be considered for Compassionate Release, you must complete this form and send it to the Medical Social Worker. The information will be used to determine if your request for Compassionate Release meets the minimum guidelines for consideration, as referenced in the Program Statement 5050.50, Compassionate Release/Reduction in Sentence. The Social Worker will meet with you regarding your request if further information is needed.

1. Check the category you are requesting Compassionate Release Consideration: (only one per request)
   ☐ Request based on Medical Circumstances
      ☐ Medical Terminal (estimated life expectancy of 18 months or less) _____
      ☐ Medical Debilitated (completely disabled, unable to perform activities of daily living and totally confined to a bed or chair OR only capable of limited self-care and confined to a bed or chair more than 50% of waking hours)
   ☐ Request based on Non-Medical Circumstances-Elderly Inmates
      ☐ Request based on Elderly Inmates over 65 with Medical Conditions who have served more than 50% of sentence
      ☐ Request based on inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced
      ☐ Request based on Elderly Inmates over 70 who have served 30 years or more of their term of imprisonment (offense that occurred on or after November 1, 1987)
   ☐ Request based on Death or Incapacitation of the Family Member Caregiver where you are the only caregiver for your minor child
   ☐ Request based on Incapacitation of a Spouse or Registered Partner where you are the only available caretaker
   ☒ Request based on extraordinary or compelling circumstances

2. Explain the extraordinary or compelling circumstances, which could not have been foreseen at the time of your sentencing you believe warrant Compassionate Release consideration. Continue on back, if necessary. Mr. Kushimo is seeking immediate release to home confinement resulting from the COVID-19 outbreak. (See attachment).

3. Explain your proposed Release Plans and continue on back, if necessary. The information should include the following detailed information:
   1. Address and phone number of where you plan to live.
      240 Massachusetts Ave., Providence, Rhode Island 02905
   2. Your family supports in the community.
      He has the family support of his wife and 2 adult children, ages 24 and 29.
   3. How you plan to cover your medical expenses and support yourself.
      He will cover and medical expenses and support through suitable, gainful employment.
   4. Where continued health treatment and services will be received.
      Transportation from the Camp to his residence would be provided by his wife.

Sensitive Limited Official Use Only
A copy of this form will be kept in the Medical Record section 6 and Inmate's Central File, and the original will remain with the Medical Social Worker.
June 2019
R-Dev 079

DOHERTY KUSHIMO #09728-070

REQUEST FOR COMPASSIONATE RELEASE ATTACHMENT

Extraordinary and Compelling Circumstances

I, Doherty Kushimo ("Mr. Kushimo"), a 58 year old African American male, respectfully requests to be considered for immediate release to home confinement for the remainder of his sentence due to the serious health risks regarding the COVID-19 virus. Without getting into explicit details, it has been strongly - in some cases mandatorily - advised by the CDC and federal and local authorities that everyone practice social distancing due to COVID-19 being highly contagious and deadly. Due to the close confinement of the living conditions at the Camp, COVID-19 would spread quickly throughout if it is somehow introduced into the Camp. Indeed, if COVID-19 is somehow introduced into the Camp, it would be the equivalent of someone sick with COVID-19 coming into your home and sealing the doors and windows behind them; social distancing is impossible and no one detained can leave.

The BOP is currently using seven criteria to place inmates in home confinement: (1) The primary offense is not violence, sex offense, or terrorism; (2) the inmate has no detainer; (3) mental health care level is less than IV; (4) PATTERN score is minimum; (5) BRAVO score is low or minimum; (6) the inmate has completed at least 50% of his sentence; and (7) no incidents in the past 12 months.

Mr. Kushimo satisfies all but one of the criteria: (1) Mr. Kushimo's fraud offense is non-violent and there is no history of violence in his record; (2) he has no detainers; (3) his mental health care level is less than IV; (4) his PATTERN score is minimum; (5) his BRAVO score is minimum; (6) he has not served 50% of his sentence, however, he humbly prays for consideration; and (7) he has no incident reports. It is also noted that Mr. Kushimo previously spent nearly five years on pre-trial home detention exhibiting impeccable compliance.

Respectfully submitted,

By _____
DOHERTY KUSHIMO

# EXHIBIT TWO



# Office of the Attorney General
## Washington, D.C. 20530

March 26, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU PRISONS

FROM: THE ATTORNEY GENERAL

SUBJECT: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic

Thank you for your tremendous service to our nation during the present crisis. The current situation is challenging for us all, but I have great confidence in the ability of the Bureau of Prisons (BOP) to perform its critical mission during these difficult times. We have some of the best-run prisons in the world and I am confident in our ability to keep inmates in our prisons as safe as possible from the pandemic currently sweeping across the globe. At the same time, there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities. I am issuing this Memorandum to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody.

## I. TRANSFER OF INMATES TO HOME CONFINEMENT WHERE APPROPRIATE TO DECREASE THE RISKS TO THEIR HEALTH

One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances. I am hereby directing you to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic. Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some eligible inmates, home confinement might be more effective in protecting their health.

In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

Memorandum from the Attorney General
Subject: Prioritization of Home Confinement As Appropriate in Response to COVID-19
  Pandemic
Page 2

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when BOP has determined—based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

## II. PROTECTING THE PUBLIC

While we have an obligation to protect BOP personnel and the people in BOP custody, we also have an obligation to protect the public. That means we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways. I am therefore directing you to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process should also be subject to location monitoring services and, where a court order is entered, be subject to supervised release.

We must do the best we can to minimize the risk of COVID-19 to those in our custody, while also minimizing the risk to the public. I thank you for your service to the country and assistance in implementing this Memorandum.



Office of the Attorney General
Washington, D.C. 20530

April 3, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU OF PRISONS

FROM:         THE ATTORNEY GENERAL

SUBJECT:    <u>Increasing Use of Home Confinement at Institutions Most Affected by COVID-19</u>

The mission of BOP is to administer the lawful punishments that our justice system imposes. Executing that mission imposes on us a profound obligation to protect the health and safety of all inmates.

Last week, I directed the Bureau of Prisons to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates, while ensuring we successfully discharge our duty to protect the public. I applaud the substantial steps you have already taken on that front with respect to the vulnerable inmates who qualified for home confinement under the pre-CARES Act standards.

As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions. I would like you to give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards. In addition, the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities, consistent with the guidance below.

I. <u>**IMMEDIATELY MAXIMIZE APPROPRIATE TRANSFERS TO HOME CONFINEMENT OF ALL APPROPRIATE INMATES HELD AT FCI OAKDALE, FCI DANBURY, FCI ELKTON, AND AT OTHER SIMILARLY SITUATED BOP FACILITIES WHERE COVID-19 IS MATERIALLY AFFECTING OPERATIONS**</u>

Memorandum from the Attorney General
Subject: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19
Page 2

While BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions. I am therefore directing you to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations. You should begin implementing this directive immediately at the facilities I have specifically identified and any other facilities facing similarly serious problems. And now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer.

For all inmates whom you deem suitable candidates for home confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred. It is vital that we not inadvertently contribute to the spread of COVID-19 by transferring inmates from our facilities. Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations.

I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.

Given the speed with which this disease has spread through the general public, it is clear that time is of the essence. Please implement this Memorandum as quickly as possible and keep me closely apprised of your progress.

## II. PROTECTING THE PUBLIC

While we have a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public. That means we cannot simply release prison populations en masse onto the streets. Doing so would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses.

That risk is particularly acute as we combat the current pandemic. Police forces are facing the same daunting challenges in protecting the public that we face in protecting our inmates. It is impossible to engage in social distancing, hand washing, and other recommend steps in the middle of arresting a violent criminal. It is thus no surprise that many of our police officers have fallen ill with COVID-19, with some even dying in the line of duty from the disease. This pandemic has dramatically increased the already substantial risks facing the men and women who keep us safe, at the same time that it has winnowed their ranks while officers recover from getting sick, or self-quarantine to avoid possibly spreading the disease.

Memorandum from the Attorney General  
Subject: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19  
Page 3

The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates. Thus, while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context.

I believe strongly that we should do everything we can to protect the inmates in our care, but that we must do so in a careful and individualized way that remains faithful to our duty to protect the public and the law enforcement officers who protect us all.